In which we'll hear oral argument this morning is number 2008-3282, Harrell v. The Department of the Interior. Mr. Segerblum. Segerblum. Segerblum. And I just want to confirm, you've reserved five minutes for rebuttal, is that correct? That's correct. Okay, you can begin whenever you're ready. I'm going to put my glasses on. Good morning, Your Honors. Unlike the last two cases where they said it was a simple case, this really is a simple case. It's a termination case from a Department of National Park Service employee that we went through an administrative hearing. And MSPB appealed that decision to the MSPB and we're here appealing those two decisions. There are two questions from my perspective involved in this appeal. The first is whether there was sufficient evidence to sustain the underlying allegations. And if you have a second, I'll go through that. It's basically a circumstantial case. Right. My client is a plumber. He worked for the Coast Guard, then for the Hoover Dam, and then was assigned to the Park Service. He worked throughout the Lake Mead National Recreation Area, which is a huge area surrounding Lake Mead. There's a lot of remote sites where they have boat docks. And they also would have water treatment facilities associated with those restaurants and boat docks. And this case involves two of those remote sites. On one occasion, he went to a remote site. There was a female employee in charge of the water treatment plant. He met her, used the restroom. I acknowledge it is a circumstantial case, but why, given the record that we have before us, is there not substantial evidence supporting the conclusion that the board reached that your client had committed the two offenses? There were credibility determinations woven in there. And there was the prior statement he had made. Why is there not substantial evidence here? What's the defect in the evidence? With respect to the first occasion, apparently it was alleged to have happened in February of 2007. My client admitted he went to the facility at that time. That was never brought to his attention for three months. So he had no chance to dispute, to corroborate whatever happened there. That's not a question of whether there's substantial evidence. So he goes into the restroom. He's at this facility. He goes into the restroom. The female who's responsible for the facility leaves. She comes back. He's gone. She goes into the restroom and says, oh, there's this piece of paper, toilet tissue on the floor in the restroom. It's a classic case. Nobody but he could have done it. Well, that's what she says. She also then walks out of the bathroom into her main facility and discovers that her brushes are missing. And her testimony is that literally one happened, then the next one happened. Now, she infers that he's responsible for the paper in the bathroom. But there's no proof or there's no connection between the brushes being missing and my client. Obviously, something happened at that incident. Two things happened at the same time, one of which they conclude happened to my client was responsible for. The other one they just concluded, well, there's no way to prove how that happened. Again, if you can infer that he did one of them, then you have to be able to infer that he did the other one. And the fact is you can infer that he was responsible for the brushes because the brushes magically reappeared a week later. How about the statements that he made to Mr. Hinojosa, which seemed to me to be evidence that's problematical for you? Well, what Mr. Hinojosa didn't point out was that he'd had a previous meeting. He was brought in and said, we have evidence that you left some fecal material in the bathroom. He knew that statement because he'd been confronted with it. Then two days later, he goes in to see the man and he says, I want to talk to you about this. And he says, what happened? And then he says, well, apparently they were upset that I didn't hit the trash can or wash my hands or something. The statement itself was based upon what he'd been told at the first meeting. It wasn't based upon something just came out of the blue. You're saying that's not a kind of a spontaneous admission on his part? No, absolutely not. But anyway, so we had the first incident, which is problematic. More importantly, as I said, he was not told about it. If this incident which caused him to be fired, why wouldn't they bring it to his attention at the time? They just basically sat on it for three months. The second incident, he goes to another facility, another remote location. Again, he goes into the restroom. No one sees what happens. He comes out. But now the man in charge of that facility was aware of the accusation. My client was not aware, but he had been told by the person at the other facility that this previous incident had happened. So he immediately calls the woman and says, Mr. Harrell has come to the facility. She says, go into the bathroom and examine the bathroom. This is on a Wednesday. He goes in, examines the bathroom, finds nothing. So that's on a Wednesday. Well, there was an explanation for that that the board accepted. I mean, one of the things in a substantial evidence case is that if you have a situation of two possible conclusions, even if a fact finder could find A instead of B or B instead of A, there's substantial evidence. If there's substantial evidence for either one, that's fine. Well, I agree that there's substantial evidence. There was testimony on this second incident, and the board believed that. Let me ask you, Mr. Segelman, one question I had about the penalty here. Do you read the notice of removal as removing your client because they felt he'd engaged in improper sanitary practices or because they felt he had engaged in a crude or offensive joke? How do you read the removal action, the decision to remove? Well, that's the point. They conflate both of them, but they really fire him because they claim he lied. I mean, they said the first incident, they didn't even bother to bring anybody's attention if it was so minor. The second one, and there's a picture of it in the record. I'm talking about what the basis for the action was. I mean, it seemed to me that I got the sense from reading the removal decision that the agency concluded this was some kind of a deliberate act, these two occasions. Oh, I think there's no question about that, that that was their assertion. But again, this was not something where he smeared feces on the wall. I mean, both incidents happened in a bathroom. This is a plumber. There's just no aggravating circumstances that you could reach that conclusion. The intention was that he had done this deliberately. Right, and like a pattern. But if you do something 100 times, and the 100th time they say, oh, you've been doing this, and we're going to fire you because you did it 100 times. And then they go ahead and say, well, this is so outrageous because you did it 100 times, we're going to go from the written warning to the termination. That begs the question. I mean, this is the perfect case that would justify a lesser punishment. They concede that the punishment could be anything from a written warning to a termination. You have an incident three months earlier. Nobody has said anything about it. It's so minor. They take a second incident, which is minor. They conflate the two and then say, oh, this is so outrageous pattern, we're going to fire you. And then there's no way you can be rehabilitated. There's no alternative punishment. I just don't see how in those facts you can have the belief that there is no chance for rehabilitation and there is no chance for a lesser punishment because you've never tried anything. So I guess I'm expressing my frustration at the matter, but it just seemed like a classic case where if the man is doing something inappropriate, please, given his record, say this is inappropriate. Don't do it again. You're suspended, whatever, but don't jump to the harshest punishment and put him on the street. It was just very frustrating. But I'd like to reserve my time. Okay. You'll have about five minutes and 40 seconds, so you'll have your rebuttal. And we'll hear from the government. Ms. Dempsey? Yes. Good morning. May it please the court. We respectfully request that this court affirm the Merit Systems Protection Board's decision sustaining Mr. Hurrell's removal from federal service for conduct on becoming a federal employee. Mr. Hurrell's removal was based upon two bathroom incidents. We're very familiar with the facts. Thanks. So I think we can go right to the legal questions in the case. But let me ask you first a question that doesn't appear in at least the facts as I see them. And I want to get a sense of whether this is part of the government's theory of the case or there's any explanation somewhere in the record that I haven't found. Normally in these kinds of cases, the case in which there is some kind of action alleged to be inappropriate action by an employee, there's some contention of motivation or showing that there was some reason that may have resulted in the inappropriate action, either anger at a supervisor or something that precipitated the event. I didn't see any indication in the record here. Is there anything that I've overlooked that would point to motivation? Because it didn't strike me that there was anything there. The government's position is that there was no motivation. Mr. Hurrell's counsel has indicated previously that one of the individuals had made certain remarks that she felt uncomfortable being around Mr. Hurrell, but that the board determined that that didn't come into play in Mr. Hurrell's actions because, moreover, there wasn't a conspiracy between the government agency employees in conspiring against Mr. Hurrell to remove him based upon this one woman's uncomfortable feelings around Mr. Hurrell. To follow up with Judge Schall's question, what was the basis of these two charges, these two specifications? Was it a violation of a specific rule or specific code of conduct, or was it inappropriate behavior, unsanitary behavior? What was it? Your Honor, all of what you said, Mr. Warshawski, the deciding official, testified that Mr. Hurrell's actions and misconduct was of a serious nature because Mr. Hurrell, as a plumber, had access to the water treatment plants that both the 8 million park visitors and thousands of park employees used, those water systems. Mr. Hurrell had access to those water systems, and his failure to maintain the basic sanitary cleanliness affected the sanitary work environment. Additionally, Mr. Hurrell lacked candor during the investigation and failed to take responsibility for his actions. He basically denied the conduct. He denied the conduct, and as one of your Honor had mentioned, he did make a comment to Mr. Hinojosa that was unsolicited, that undermined his denial of engaging in those incidents, that he couldn't hit the wastebasket or didn't wash his hands enough, and that undermined his denial. With regard to, well, just touching on the Board's determination that the agency showed by preponderant evidence that Mr. Hurrell had engaged in the conduct specified, the Board had made credibility determinations on the agency's employees' testimonies and determined that they were unbiased, persuasive, consistent with one another, as well as being consistent with their prior statements and with the documentary evidence of record. Additionally, the Board properly determined that the agency's removal of Mr. Hurrell was reasonable, and this Court defers to the agency's determination of disciplinary action unless the penalty is so excessive and harsh as compared to the offense. The Board did determine that the agency conscientiously and carefully reviewed the Douglas factors in determining to remove Mr. Hurrell. And if this Court has no further questions. Thank you, Ms. Dempsey. We'll hear from Mr. Sagerblum. You have your five minutes and 41 seconds for your full rebuttal. I'll be very brief unless you have any questions, but I did put out on page 19 of the Joint Appendix where they indicate the proposed penalty and states you are a plumber and you are expected to know and obey the rules of conduct. You occupy a position of public trust in which you're expected to maintain sanitary conditions in all aspects of your job, especially in water plants that serve the public. So basically, at least in writing, they were asserting that it was his inability to follow sanitary conducts, but having been through the hearing, the assertion essentially was that, well, first off, there was this underlying thing about these women being uncomfortable around him feeling he was sexually harassing them, although they never filed a complaint. And then that there was some kind of a motivation here, although. What was the sort of suggestion of motivation here? Flesh that out for me, would you, to the extent that the record reflects it. I don't want you to go beyond the record. Well, the only motivation was really on the part of the female witnesses, the one operator at the first. You're talking about motivation to charge him as opposed to any hypothetical motivation that he may have had for the conduct. I mean, I guess the first woman was indicating that she felt uncomfortable around him and that maybe this was part of his behavior towards women, I'm not sure. But there never was an accusation that, yes, he's trying to somehow or other intimidate women or embarrass them or whatever. These are co-ed restrooms. He didn't go into a female restroom. The second place where he went was a man was operating the plant at the time, so I don't see the sexual thing. But the women clearly were much more attuned to this issue. These were just employee restrooms. Is that correct? Right. They were inside the water treatment facility and just accessible to the women, but they weren't co-ed. Just for the... All right. Unless you have any further questions, thank you very much. Thank you. The case is submitted. That concludes...